FILED
CLERK

10 JAN 20  PM 2: 52

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------x   Index No.:

LUCIENNE MOHAMMED

**COMPLAINT**

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
THE CITY OF NEW YORK, and DAYSI GARCIA,

**DEMAND FOR JURY
TRIAL**

TOWNES, J.
ORTER M.J.

Defendants.

----------------------------------------------------------------x

Plaintiff, Lucienne Mohammed (also referred to as "Plaintiff" or Ms. "Mohammed" , by

her attorneys, Ofodile & Associates, P.C., complaining of the Defendants, The New York City

Department of Education, City of New York, and Ms. Daysi Garcia,  upon  information and

belief, alleges as follows:

## **NATURE OF ACTION**

1.       This is an action brought by Plaintiff, pursuant to Title VII of the Civil Rights Act

of 1964, as amended, 42 U.S.C § 2000e, et seq., the New York State Executive Law § 296 (the

New York State Human rights Law), and the Administrative Code of the city of New York, § 8,

et seq., to redress Defendants' adverse employment actions against Plaintiff, which were

perpetrated in retaliation for Plaintiff's protected activities of: protesting the violation of other

employees; rights under the aforementioned laws; and standing up for another staff person's

exercise of their rights under the aforementioned laws.

1

2.     Plaintiff seeks injunctive and declaratory relief, compensatory and other legal and equitable reliefs pursuant to Title VII, the New York State Human Rights Law, the New York City Administrative Code, and 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

3.     Jurisdiction is specifically conferred on the United States District Court by 28 U.S.C. § 1331, this being an action arising under the Constitution and Federal Law, and by 28 U.S.C. § 1343(a)(3), this being an action authorized by law to redress the deprivation, under color of statute, ordinance, regulation, custom or usage, of rights, privileges, and immunities secured to Plaintiff by the Constitution, and by 42 U.S.C. §§ 1981 and 1983 and under the First and Fourteenth Amendments to the United States Constitution.

4.     Venue is proper because the events complained of occurred in the County of Kings which is in the Eastern District of New York.

## PARTIES

5.     During all times relevant and material to this Complaint, Plaintiff Lucienne Mohammed was a citizen of the United States residing in Brooklyn, New York, within the jurisdiction of this Court.

6. During all times relevant and material to this case, Defendant New York City Department of Education (also referred to as "NYCDE") was and is a municipal corporation

2

incorporated under the laws of the State of New York, and a branch of the City of New York.

7.     During all times relevant and material to this case, Defendant Daysi Garcia was employed by Defendant City of New York through its Department of Education.

8.     During all times relevant and material to this case, the actions of Defendant Daysi Garcia complained of herein were done as part of the custom, practice, usage, regulation, and/or direction of Defendant City of New York, and Defendant City is as such responsible for the actions of these individual Defendants.

9.     During all times relevant and material to this case, Defendants Daysi Garcia was acting as an employee/agent of Defendant New York City Department of Education and the City of New York, and therefore Defendant New York City Department of Education is responsible for the actions of Defendant under the principal-agent/*respondeat superior* theory.

## FULFILLMENT OF ADMINISTRATIVE PREREQUISITES

10.    Plaintiff Lucienne Mohammed has satisfied all administrative and judicial prerequisites to the institution of this action.

11.    Plaintiff timely filed a charge of discrimination against Defendants with EEOC within three hundred days of some of the acts of retaliation complained of herein in accordance with the requirements of the Civil Rights Act of 1964, as amended.

3

12. Plaintiff received a "Dismissal and Notice of Rights to Sue" letter on October 27, 2009, dated October 19, 2009, and postmarked October 23, 2009, and this action is filed within ninety days of the receipt of the Notice of Right to Sue. Prior to the commencement of this action, the EEOC has not filed any action nor has it entered into any conciliation agreement regarding the allegations in this complaint.

13. Before the institution of this action, Plaintiff served a copy of this Complaint on the City of Corporation Counsel's Office as well as on the New York City Commission on Human rights on January 19, 2010, in accordance with the requirements of the New York City Administrative Code § 8-502 (c).

14. Plaintiff also served a Notice of Claim on the New York City Department of Education and on the Comptroller of the City of New York regarding the allegations made herein within ninety days of the occurrence of the some of the harassing allegations made in this case.

## FACTS COMMON TO ALL CAUSES OF ACTION

15. Plaintiff, an individual of African descent, has lived and worked within her community for over 20 years, seventeen of which she had taught at Public School (PS) 65. The school is now located at 696 Jamaica Avenue, Brooklyn, N.Y. 11208. In addition to teaching at PS 65, Plaintiff sits on the Executive Board of the Cypress Hills Local Development Corporation, she is a Charter Member of the Cypress Hills Advocates for Education (CHAFE), and she has been and continues to be an Assistant Coordinator of the Highland Park Children's

4

Garden for over 15 years.

16. Plaintiff had successfully worked hard for seventeen (17) years to maintain a successful career as a classroom teacher at P.S. 65. However once Plaintiff took action opposing the disparate treatment of teachers of color, and after she took action defending a particular teacher of color named Mr. Phillip, Defendants responded by taking adverse actions against Plaintiff.

17. Plaintiff and Mr. Phillip protested the removal of Assistant Principals of color whom they believed were removed because of their race and/or ethnic background by Ms. Garcia, Ms Garcia told another teacher, Ms. Francisco that if Ms. Francisco stayed away from "that group of teachers (teachers of color), that she would be fine" and because she continued to associate with Plaintiff and Mr. Phillip, she was terminated at the end of the school year. Also teachers who were observed speaking with Plaintiff or Mr. Phillip were questioned by the Assistant Principal.

18. In October 2006, during the month of Ramadan, Ms. Garcia insulted Plaintiff and a young Muslim student who was wearing a hijab (a traditional covering for the hair and neck that is worn by Muslim women) in the cafeteria by saying Islam is "a religion that starves children".

19. In addition after Plaintiff protested against the acts of discrimination by Ms.

5

Garcia against teachers of color, Ms. Garcia condoned a professional development activity in November, 2006 where plaintiff was asked to imitate the role of the "the Black ugly Negro" in front of the entire staff.  Plaintiff felt humiliated afterwards.


20.    In October 2006 Ms. Garcia filed an OSI investigation against Plaintiff for signing a grievance.  Ms. Garcia had given a false report concerning the timing and reason for filing the OSI report to the Community Superintendent, Ms. Martha Torres.  The investigation was initiated after the Regent and the Union had reached an agreement concerning the grievance.  Ms. Torres concluded that Ms. Garcia's accusations were unfounded.


21.    On January 2, 2007 after Plaintiff filed an Article 2 with the UFT and a complaint with OEO for discrimination against Ms. Garcia, she received a letter to her file for the pacing of reading lessons.  The only teachers who received these letters were 5th Grade teachers, and all 5th Grade teachers were dark skinned.  All of the 3rd and 4th Grade teachers who were similarly situated to Plaintiff were White or White Hispanics, and none of them received the same letters.


22 .    In 2007, Ms. Garcia removed Plaintiff from her 5th Grade class where she taught for 15 years and placed her in a 3rd Grade class, with a new program and without any training. There Plaintiff was ostracized, harassed, and targeted by administration.  Ms. Garcia's actions eliminated all of plaintiff's per session hours, which amounted to approximately ten thousand dollars a year loss of income.


23.    Defendant Garcia created an extremely hostile work environment for Plaintiff which started to adversely affect her health.  For example Ms. Garcia has made, or allowed to be made, biased comments and took or allowed biased actions to be taken against plaintiff.  She has caused plaintiff to be isolated and ostracized by her colleagues.

24.     Ms Mohammed was also treated disparately by being the only teacher in the two buildings which composed P.S. 65 to be ascribed a written log by the administration and who was required to hand in eighteen lesson plans each Monday before the start of the school day.

25. Ms. Garcia made false accusations against Plaintiff. She summoned her to her office as a form of intimidation and she placed numerous letters in her personnel files based on hearsay, exaggerations, and fabrications. All of the letters in Plaintiff's personnel files (except one) were made after plaintiff wrote her letter in support of Mr Philip for his OEO case. The letters also came after Plaintiff filed an Article II with the Office of Equal Opportunity for discrimination.

26.     Ms. Garcia also required Plaintiff to be double teamed during formal observations which deviated from the normal practice. Plaintiff and Mr. Phillips both of African descent were the only teachers who were observed by individuals from the Regent or double teamed for formal observations. Ms. Garcia used aspiring principals and her assistant principal, Ms. Jargon, to intimidate, accuse and collaborate with her embellishments in order to destroy Plaintiff's career.

27.     After receiving an official letter informing the Defendant of the Union's acceptance of the Plaintiff's Article 23: Special Complaint, the Plaintiff was given an additional formal observation. On May 8, 2007 Plaintiff received a notice that she would be given an additional formal observation even though she had already fulfilled the required number of formal observations as a tenured teacher which were all satisfactory. At the time new teachers had not received their minimum of four observations. Upon information and belief, only

7

teachers of color were given three or more formal observations. Ms. Garcia used her administrative position to intimidate and force children to fabricate lies against Plaintiff and Mr. Phillip Casey.

28.     After Plaintiff was subjected to additional Formal Observation in retaliation for her protected activities, Ms. Garcia used her administrative position to give Plaintiff an unsatisfactory rating motivated by discrimination and retaliation on all of her observations. Plaintiff observed teachers receive satisfactory ratings quickly, while she received an unsatisfactory. Plaintiff was forced to reach goals that other teachers were not required to achieve.  And when Plaintiff commented on the discrepant treatment, she was given another 'U' rated observation. Other teachers either received satisfactory ratings, or they were told that they could  redo the lesson.

29.     Plaintiff was informed by her colleague  that Ms. Garcia came to the Annex and insulted Plaintiff's family.  She stated that Plaintiff did not belong in the teaching profession because she helped her daughter raise her young children.  She was also informed by the former chapter leader of her union, Mr. Jonathan Horton, that on more than one occasion, Ms. Garcia spoke negatively about Plaintiff and about Mr. Phillips in the open office.  In addition Ms. Garcia told the present union chapter leader Mr. Gagliano, to tell Plaintiff that if she left the school she (Garcia) would help by clearing Plaintiff's file, and she would help Plaintiff find another school. Mr. Gagliano also told Plaintiff that Ms. Garcia made derogatory comments about Plaintiff that he did not want to repeat.

8

30.     Upon information and belief, in addition to discriminating and retaliating against Plaintiff and Mr. Philip (removed to the "rubber room".), Ms. Garcia also discriminated against the following employees because of their race or association with minorities;  Ms Bell-Farmer (Afro-Carribean) -- removed as Assistant Principal), Ms. Deirdre Lacy (Afro-Carribean -- removed as Assistant Principal), Ms. Roy (Afro-Carribean -- terminated and removed as guidance counselor ), Ms. Ferron (Afro Carribean – U rated and removed to the "rubber room"), Ms. Khan (Indo-Carribean - terminated as a teacher), and Ms. Sandoval (Mexican and married to an African-American – U rated).

31.     Upon information and belief, Ms. Garcia discriminated against and retaliated the following employees, because of their race or association with minorities, and because they filed an Article 2 for discrimination or filed with the OEO;  Ms. Bell-Farmer (Afro-Carribean-removed as Assistant Principal), Ms. Jessenia Franscisco (Dominican, married to an East Indian-received a U rating and her license was terminated), Ms. Asha Marrero (Indo-Carribean-forced to leave or receive a U rating), and Mr. Jacob Shannon (Caucasian-involved in a relationship with Asha Marrero- U-rated and removed to the "rubber room").

32.     Ms. Garcia has at present succeeded in suspending Plaintiff from teaching based on pretextual grounds because of Plaintiff's race, and in retaliation for Plaintiff opposing what she honestly believed to be discriminatory actions of Ms. Garcia against minority teachers and those that associate or identify with them.

9

33.   Ms. Garcia broke the lock to Plaintiff's locker and threw away everything in Plaintiff's locker during the 2007 summer vacation without calling Plaintiff who lived a block away or letting her know and when Plaintiff asked her why she did that, she (Garcia) responded that Plaintiff should have taken her things home with her. Upon information and belief, Plaintiff was the only person whose locker was emptied and the contents thrown away by Ms. Garcia. Furthermore, when Plaintiff was unceremoniously sent to the "rubber room" by Ms. Garcia, on June 4th, 2008, she was not given any opportunity to get her things or return to her class room and when her daughter went to get her things the following day, Ms. Garcia advised her that she had thrown them away. What Ms. Garcia converted to her own use and/or purposes included, but were not limited to: a CD player, CDS, cassettes, Plaintiff's personal books, (class sets of the Bridge to Terapithia, the Watsons go to Birmingham, Devils Arithmetic, Memories of Ann Frank, and six copies of "I am an American, Encounters, Follow the Dream, a book about Martin Luther King speech, Lincoln' Gettysburg Address, Children of Dust Bow, Children Speak Out about the Civil Rights Movement, Kids at Work, among many others),  school games bought by Plaintiff with her money for the use of her students. Also Ms. Garcia  sent the Police to her home to allegedly get the money for a student's trip even though she new that Plaintiff was already at the rubber room.  Even while Plaintiff was in the rubber room, Ms. Garcia lodged allegations against Plaintiff of possible child abuse with the Chancellor's office alleging that Plaintiff was taking school children to her house which allegation was investigated and was unfounded. She also gave a newspaper interview in which she impugned Plaintiff's character as part of her concerted retaliation and harassment of Plaintiff for her protected activities .

10

## AS FOR A FIRST CAUSE OF ACTION

34.     Plaintiff Lucinne Mohammed repeats and realleges paragraphs 1 through 33 as if each paragraph is repeated verbatim herein.

35.     New York City Department of Education through Daysi Garcia and her agents discriminated against Plaintiff in the terms, conditions and privileges of her employment on the basis of her race  in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C § 2000e, et seq.

36.     The Ms. Garcia's conduct was intentional, deliberate, willful, and conducted in callous disregard of the rights of Plaintiff.

37.     The Defendants' policies and practices resulted in the Plaintiff being subject to disparate treatment, and hostile work environment.

38.     By reason of the Defendant's discrimination, the Plaintiff suffered financial and emotional damages and is entitled to all legal and equitable remedies available under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C § 2000e, et seq, that she may be shown entitled to during the trial of this case.

## AS FOR A SECOND CAUSE OF ACTION

39.     Plaintiff Lucinne Mohammed repeats and realleges paragraphs 1 through 38 as if each paragraph is repeated verbatim herein.

40.     Defendant Daysi Garcia discriminated against Plaintiff on the terms conditions and privileges of her employment on the basis of her race  in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, et seq.

41.     The Ms. Garcia's conduct was intentional, deliberate, willful, and conducted in callous disregard of the rights of Plaintiff.

42.     By reason of the Defendant Ms Garcia's discrimination, the Plaintiff suffered financial and emotional damages, and is entitled to all legal and equitable remedies available under the Civil Rights Act of 1866, as amended, 42 U.S.C § 1981.

## AS FOR A THIRD CAUSE OF ACTION

43.     Plaintiff Lucinne Mohammed repeats and realleges paragraphs 1 through 41 as if each paragraph is repeated verbatim herein.

44.     Defendant Daysi Garcia retaliated against Plaintiff in the terms, conditions and privileges of her employment for exercising her First Amendment Constitutional rights of freedom of expression for her protest of Ms. Garcia's discriminatory actions against minority

12

employees and those who support or associate with them and because Ms. Mohammed supported and offered to be a witness and was a witness in discrimination and other complaints others filed against Ms. Garcia.

45.     The Ms. Garcia's conduct was intentional, deliberate, willful, and conducted in callous disregard of the rights of Plaintiff.

46.     By reason of the Defendant Ms Garcia's violation of Plaintiff's First Amendment constitutional right to freedom of expression, Plaintiff suffered financial and emotional damages, and is entitled to damages thereby.

## AS FOR A FOURTH CAUSE OF ACTION

47.     Plaintiff Lucienne Mohammed repeats and realleges paragraphs 1 through 46 as if each paragraph is repeated verbatim herein.

48.     Defendants discriminated against Plaintiff on the terms conditions and privilege of her employment on the basis of her race  in violation of NY State Executive Law § 296.

49.     The Defendant's conduct was intentional, deliberate, willful, and conducted in callous disregard of the rights of Plaintiff.

13

50.   The Defendant's policies and practices resulted in the Plaintiff being subject to disparate treatment, a hostile work environment and retaliation.

51.   By reason of the Defendant's discrimination, the Plaintiff suffered financial and emotional damages and is entitled to legal and equitable remedies available under N.Y. State Executive Law § 296.

## AS FOR A FIFTH CAUSE OF ACTION

52   Plaintiff Lucienne Mohammed repeats and realleges paragraphs 1 through 51 As if each paragraph is repeated verbatim herein.

53.   Defendants discriminated against Plaintiff on the terms conditions and privileges of her employment on the basis of her race in violation of NYC HRL § 8-107.

54.   Daysi Garcia's conduct was intentional, deliberate, willful, and conducted in callous disregard of the rights of Plaintiff.

55.   The Defendant's policies and practices resulted in the Plaintiff being subject to disparate treatment, a hostile work environment and retaliation.

14

56.     By reason of the Defendant's discrimination, the Plaintiff suffered severe harm, and is entitled to all legal and equitable remedies available under NYC HRL § 8-107 that is supported by proof to be adduced during the trial of this case.

## AS FOR A SIXTH CAUSE OF ACTION

57.     Plaintiff Lucinne Mohammed repeats and realleges paragraphs 1 through 56 as if each paragraph is repeated verbatim herein.

58.     New York City Department of Education through Daysi Garcia and her agents retaliated against Plaintiff in the terms, conditions and privileges of her employment for complaining about what she believed to be discrimination against ethnic and racial minorities as well as against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C § 2000e, et seq.

59.     The Ms. Garcia's conduct was intentional, deliberate, willful, and conducted in callous disregard of the rights of Plaintiff.

60.     The Defendants' policies and practices resulted in the Plaintiff being subject to disparate treatment, and hostile work environment.

61.     By reason of the Defendant's discrimination, the Plaintiff suffered financial and emotional damages and is entitled to all legal and equitable remedies available under Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C § 2000e, et seq, that she may be shown entitled to during the trial of this case.

## AS FOR A SEVENTH CAUSE OF ACTION

62.     Plaintiff Lucinne Mohammed repeats and realleges paragraphs 1 through 61 as if each paragraph is repeated verbatim herein.

63.     Defendant Daysi Garcia retaliated against Plaintiff in the terms, conditions and privileges of her employment for complaining about what she believed to be discrimination against ethnic and racial minorities as well as against Plaintiff in violation in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, et seq.

64.     The Ms. Garcia's conduct was intentional, deliberate, willful, and conducted in callous disregard of the rights of Plaintiff.

65.     By reason of the Defendant Ms Garcia's discrimination, the Plaintiff suffered financial and emotional damages, and is entitled to all legal and equitable remedies available under the Civil Rights Act of 1866, as amended, 42 U.S.C § 1981, that she may be shown entitled to during the trial of this case.

16

## AS FOR AN EIGHT CAUSE OF ACTION

66.     Plaintiff Lucinne Mohammed repeats and realleges paragraphs 1 through 65 as if each paragraph is repeated verbatim herein.


67.     Defendants Daysi Garcia and NYCDE subjected Plaintiff to a retaliatory hostile work environment for her protected activities under the Civil Right Act of 1866, as amended, 42 U.S.C. § 1981, the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., The New York State Human Rights Law § 296, and the Administrative Code of the City of New York.


68.     The Ms. Garcia's conduct was intentional, deliberate, willful, and conducted in callous disregard of the rights of Plaintiff.


69.     By reason of the Defendants' violation of Plaintiff's rights under the afore-mentioned laws, Plaintiff suffered financial and emotional damages, and is entitled to damages thereby.


## AS FOR A NINTH CAUSE OF ACTION

70.     Plaintiff Lucienne Mohammed repeats and realleges paragraphs 1 through 70 as if each paragraph is repeated verbatim herein.


17

71.     Defendants retaliated against Plaintiff In the terms conditions and privilege of her employment in violation of NY State Executive Law § 296.

72.     The Defendant's conduct was intentional, deliberate, willful, and conducted in callous disregard of the rights of Plaintiff.

73.     By reason of the Defendants' retaliation, the Plaintiff suffered financial and emotional damages and is entitled to legal and equitable remedies available under N.Y. State Executive Law § 296.

## AS FOR A TENTH CAUSE OF ACTION

74     Plaintiff Lucienne Mohammed repeats and realleges paragraphs 1 through 73 as if each paragraph is repeated verbatim herein.

75.     Defendants retaliated against Plaintiff in the terms, conditions, and privileges of her employment in violation of NYC HRL § 8-107.

76.     Daysi Garcia's conduct was intentional, deliberate, willful, and conducted in callous disregard of the rights of Plaintiff.

18

77.     By reason of the Defendant's retaliation, the Plaintiff suffered severe harm, and is entitled to all legal and equitable remedies available under NYC HRL § 8-107 that is supported by proof to be adduced during the trial of this case.

**WHEREFORE**, Plaintiff prays for judgment:

1.     Awarding against Defendant New York City Department of Education, under the 1st, 2nd, 4th, 5th, 6th, 7th, 8th, 9th, and 10th causes of actions:

    i.     Damages in the amount to be proved at trial for each cause of action and in accordance with proof;

    ii.     Damages for past pain and suffering and mental and emotional anguish, and for future pain and suffering and emotional and mental anguish, in the amount to be proved at trial for each cause of action and in accordance with proof;

    iii.     Lost wages/ earning power, in the amount to be proved at trial and in accordance with proof;

    iv.     Costs and disbursements of this action;

    v.     Statutory attorneys fees for relevant causes of action, in the amount to be proved at trial and in accordance with proof.

    vi.     Such other relief as Plaintiff may be shown entitled to.

2.     Awarding against Defendant Ms. Daysi Garcia, under the 2nd, 3rd, 4th, 5th, 7th, 8th, 9th, and 10th causes of actions:

19

i.   Damages in the amount to be proved at trial for each cause of action and in accordance with proof;

ii.   Damages for past pain and suffering and mental and emotional anguish, and for future pain and suffering and emotional and mental anguish, in the amount to be proved at trial for each cause of action and in accordance with proof;

iii.   Punitive damages against in the amount to be proved at trial and in accordance with proof;

iv.   Lost wages/ earning power, in the amount to be proved at trial and in accordance with proof;

v.   Costs and disbursements of this action;

vi.   Statutory attorneys fees for relevant causes of action, in the amount to be proved at trial and in accordance with proof.

vii.   Such other relief as Plaintiff may be shown entitled to.

Dated: Brooklyn, New York
        January 20, 2009

OFODILE & ASSOCIATES, P.C.

By: _____
Anthony C. Ofodile, Esq. (AO-8295)
Attorneys for Plaintiff
498 Atlantic Avenue
Brooklyn, New York 11217
(718) 852-8300

20

EEOC Form 161 (2/08)   U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: Lucienne D. Mohammed<br>160 Etna Street<br>Brooklyn, NY 11208 | From: **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2008-00972** | **Katherine  Greenfield,**<br>**Investigator** | **(212) 336-3762** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt **of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

_Spencer H. Lewis, Jr.,_
**Spencer H. Lewis, Jr.,**
**Director**

10/1/9
(Date Mailed)

cc:   **NYC DEPARTMENT OF EDUCATION**
**Lisa Becker**
**52 Chambers St.**
**New York, NY 10007**